IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JOSEPH MAHONEY                                                                                                            PLAINTIFF

vs.                                           CIVIL NO. 04-3079

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION                     DEFENDANT

## **MEMORANDUM OPINION**

Joseph Mahoney ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits ("DIB"), under Title XVI of the Act.

**Background:**

The application for DIB now before this court was filed on August 8, 1999, alleging an onset date of January 1, 1991,[1] due to a back disorder; a disorder of the muscle and connective tissue; continuous pain and numbness in the back, legs, and hips; and, irritability and depression. (Tr. 203-205). An administrative hearing was held on June 28, 2001. (Tr. 40-91). On September 13, 2001, the Administrative Law Judge ("ALJ") then rendered an unfavorable decision. (Tr. 150-156). On appeal to the Appeals Council, the case was remanded to the ALJ for further evaluation. (Tr. 188). According to the remand order, the audio tape of the administrative hearing was partially inaudible, and the ALJ failed to apply the proper definition of substantial gainful activity. (Tr. 189).

---

[1] Initially, plaintiff alleged his onset date to be July 24, 1999. However, at the administrative hearing, the ALJ noted that plaintiff's date last insured was June 30, 1996. At that time, plaintiff amended his onset date. When the ALJ asked plaintiff why he did not file for disability in 1991, he stated that he was a proud man and was hoping that his business would "take off." (Tr. 89).

A second administrative hearing was held on August 15, 2002. (Tr. 92-140). Again, the ALJ rendered an unfavorable decision on October 22, 2002. (Tr. 14-22). The case was successfully appealed to this court, and the case was remanded to the ALJ for further consideration, pursuant to a motion for remand filed by the Commissioner. (Tr. 571). On remand, the ALJ was directed to further evaluate plaintiff's subjective complaints in accordance with *Polaski v. Heckler*, 751 F.2d 943, 948 (8th Cir. 1984), 20 C.F.R. § 404.1529, and Social Security Ruling 96-7p. (Tr. 569).

A third administrative hearing was then held on May 10, 2004. (Tr. 851-896). Plaintiff was present and represented by counsel. At the time of this hearing, he was sixty-one years old, and possessed a high school education. (Tr. 556). His past relevant work ("PRW"), was as a service manager for an air conditioning service provider and a home inspector. (Tr. 556).

On June 15, 2004, the ALJ issued a written opinion finding that, although severe, plaintiff's impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 556-564). After discrediting plaintiff's subjective allegations, the ALJ then concluded that he maintained the residual functional capacity ("RFC"), to perform light work, to include lifting twenty pounds occasionally and ten pounds frequently; standing and/or walking for up to six hours during an eight-hour workday; and, occasionally bending or stooping. (Tr. 563). With the assistance of a vocational expert ("VE"), the ALJ then determined that plaintiff's RFC did not preclude him from performing his PRW. (Tr. 563).

On October 29, 2004, the Appeals Council declined to review this decision. (Tr. 545-547). Subsequently, plaintiff filed this action. (Doc. # 1). The case is now before the undersigned by

2

consent of the parties. The parties have filed appeal briefs, and the case is now ready for decision. (Tr. 6, 7).

**Evidence Presented:**

From February 22, 1992, until October 25, 1993, plaintiff saw Dr. David Fachting, a chiropractor. (Tr. 358-359). Plaintiff underwent adjustments to his right knee, lower back, and cervical spine. (Tr. 358-359).

On August 30, 1993, plaintiff was treated for a swollen knee. (Tr. 293). He then returned on September 9, 1993, to have the knee checked again. On both occasions, he underwent five minutes of ultrasound therapy. (Tr. 293).

On November 23, 1993, an x-ray of plaintiff's lumbosacral spine showed no evidence of recent fracture or dislocation. (Tr. 356). Plaintiff reported symptoms to include pinched nerves, muscle spasms, and a left leg differential of three and one-half millimeters. The doctor noted that plaintiff's left hip joint did appear to be degenerative, and his L5 disc was wedged. (Tr. 357). It was noted that neglecting this problem would cause further degeneration of the hip joint. (Tr. 357).

On June 8, 1994, x-rays of plaintiff's lumbosacral spine revealed no evidence of a recent fracture or dislocation. (Tr. 354). However, plaintiff continued to experience pinched nerves, muscle spasms, and had a left leg differential of seven millimeters. A such, plaintiff was diagnosed with left hip degenerative joint disease. (Tr. 355).

From May 19, 1995, until December 20, 1996, plaintiff was treated for tightness in the lower back and the back of the hips; radiating pain into the lower back of the hip, buttock, back of the upper leg, and back of the knee on the right; and, radiating pain into the lower back, back of the hip,

buttock, back of the upper leg, and back of the knee on the left. (Tr. 303-337). On occasion, he was also treated for pain radiating into the top of his right shoulder. (Tr. 336, 337). Treatment included specific posterior to anterior adjustive procedures with drop adjustive procedures to the sacrum and the right innominate P. I. N; specific adjustive procedures to the C1, C2, C5, C6, and C7; and, specific anterior adjustive procedures to the T5, T6, and T7. (Tr. 304). However, with each treatment, Dr. Mark L. Ungerank, a chiropractor, noted that plaintiff's complaints improved. (Tr. 303-337).

On October 26, 1999, Dr. Ungerank wrote a letter indicating that he had treated plaintiff since June of 1994, for lower back and leg pain that he suffered as a result of a work-related accident. (Tr. 302). He stated that plaintiff usually responded well to treatment, but over the past four to six months, his condition had begun to severely deteriorate. As such, Dr. Ungerank referred plaintiff to an orthopedic surgeon who told plaintiff that his femur head was deteriorating, but that his condition did not yet warrant surgery. Dr. Ungerank then reported that plaintiff could sit for no more than fifteen minutes without moving around, stand no more than five minutes without moving, and could not walk for prolonged periods without his legs collapsing. He was of the opinion that plaintiff was no longer employable, and was unable to continue his work as a home inspector, due to his inability to climb stairs to attics or get up on rooftops. (Tr. 302).

On October 16, 2001, Dr. Anthony McBride, and orthopaedist, wrote a letter indicating that he had been treating plaintiff since 1999, for bilateral hip arthrosis and lumbar spondylosis. (Tr. 390). He was of the opinion that plaintiff's condition began before 1996, and had most likely been

(Rev. 8/82)

developing over many years. Dr. McBride stated that his condition would eventually require total hip arthroplasties. (Tr. 390).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents his from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory

5

diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

## **Discussion:**

The relevant time period in this case is plaintiff's alleged onset date, January 1, 1991, through his date last insured, June 30, 1996. As such, any medical records dated before or after the relevant time period will only be considered if they are relevant to plaintiff's condition during this time period. *See Cunningham v. Apfel*, 222 F.3d 496, 502 (8th Cir. 1990) (holding that medical evidence dated after the ALJ's decision is only material if it relates to the claimant's condition on or before the date of the ALJ's decision).

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence

6

presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

Plaintiff has alleged a variety of disabling impairments, including back disorder; a disorder of the muscle and connective tissue; continuous pain and numbness in the back, legs, and hips; and, irritability and depression. Neither plaintiff's testimony nor the objective medical evidence supports plaintiff's allegations.

As outlined above, we note that, during the relevant time period, plaintiff sought chiropractic treatment for tightness in the lower back and the back of the hips; radiating pain into the lower back of the hip, buttock, back of the upper leg, and back of the knee on the right; and, radiating pain into the lower back, back of the hip, buttock, back of the upper leg, and back of the knee on the left. (Tr. 303-337). *See* 20 C.F.R. § 404.1513(a) (showing that a chiropractor is not included in the list of acceptable medical sources). However, each time, Dr. Ungerank indicated that plaintiff's complaints improved with treatment. (Tr. 303-337). *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995) (holding that a condition that can be controlled or remedied by treatment cannot serve as a basis for a finding of disability). In fact, the record reveals that plaintiff was not prescribed any pain

7

medication for his alleged pain. *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints). There is no indication in the record that plaintiff was taking anything more than over-the-counter pain medications. *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir.1999) (holding that the mere use of nonprescription pain medication is inconsistent with complaints of disabling pain).

We also note that plaintiff testified that he had continued to work as a home inspector until 1998 or 1999, at which time he feel off of a roof. (Tr. 878). While this work may not have risen to the level of substantial gainful activity, it is evidence of his ability to perform at least some work activities. *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (holding that plaintiff's ability to continue to work twenty hours per week as a farmer belied a finding of total disability). Clearly, plaintiff was not totally unable to work.

Plaintiff's own reports concerning his activities of daily living also contradict his claim of disability. On his supplemental interview outline dated August 8, 1998, plaintiff reported an ability to care for his personal hygiene, do the laundry, wash dishes, vacuum/sweep, take out the trash, perform some home and appliance repairs, sometimes wash the car, sometimes mow the lawn, shop for groceries, go to the Post Office and bank, prepare sandwiches, pay bills, use a checkbook, count change, drive familiar and unfamiliar routes, sometimes walk for exercise and errands, use public transportation, watch television, listen to the radio, visit friends and relatives, and attend auctions. (Tr. 225-226). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir.

8

1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

Further, we can find no reason to discount the ALJ's decision to dismiss the statements of plaintiff's wife indicating that plaintiff experienced problems with memory and concentration, as well as difficulty lifting heavy equipment. (Tr. 881). As the determination as to the weight given to these statements was clearly within the ALJ's province, we believe that dismissal of the statements on the basis of the witness's financial interest in the outcome of the case was proper.[2] *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support

---

[2]Contrary to plaintiff's argument, there is no indication that anyone else testified on plaintiff's behalf at the hearing held on May 10, 2004. (Tr. 851-896). Therefore, the ALJ did not address the testimony of Janie Williams or John Bruner, both given at previous administrative hearings. (Tr. 69-79, 138-139).

9

plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a range of light work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question,"and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, plaintiff's subjective complaints, and his medical records. On June 12, 2000, Dr. Alice Davidson, a non-examining, consultative physician, completed an RFC assessment of plaintiff. (Tr. 338-346). After reviewing his medical records from his date of onset until his date last insured, Dr. Davidson concluded that plaintiff could lift twenty pounds occasionally and ten

pounds frequently and could sit, stand, and walk for six hours out of an eight-hour workday. (Tr. 339). She also determined that he could occasionally climb, balance, stoop, kneel, crouch, and crawl. (Tr. 340).

In addition to this assessment, the ALJ also considered plaintiff's own admissions concerning his ability to perform various activities, as well as the letter written by Dr. Ungerank.[3] Then, based on the entirety of the evidence, the ALJ determined that plaintiff could perform a significant range of light work, limited by his ability to only occasionally bend or stoop. (Tr. 563). Following an independent review of the record in this matter, we find substantial evidence to support this conclusion. In so doing, we note that plaintiff has only sought chiropractic treatment for his impairments; has responded well to this treatment; has not been prescribed any pain medications; and, has not been directed by a physician to limit his physical activities.

While plaintiff contends that Dr. Anthony McBride's assessment supports his claim of disability, the undersigned is cognizant of the fact that this assessment was made in August 1999, approximately three years after the relevant time period had expired. (Tr. 299-301). Although Dr. McBride voiced his opinion that plaintiff's problems began prior to 1996, and had most likely been developing over many years, we can find no evidence to support a finding of total disability during the relevant time period. Further, we note that Dr. Ungerank's letter indicating that plaintiff's condition had significantly deteriorated was also made several years after plaintiff's date last insured.

---

[3]Although plaintiff contends that the ALJ relied on an assessment completed by Dr. Alice M. Martinson, this is not the case. In fact, the RFC assessment completed by Dr. Martinson was completed in August 2000, four years after plaintiff's date last insured. (Tr. 348-349). While her assessment is evidence of plaintiff's condition in 2000, it does not provide any information concerning plaintiff's condition during the relevant time period.

AO72A
(Rev. 8/82)

Given the fact that these assessments referred to plaintiff's condition after the relevant time period had expired, we are unable to find them sufficient to evidence plaintiff's condition during the relevant time period. Therefore, the ALJ's RFC assessment will stand.

We also find that substantial evidence supports the ALJ's finding that plaintiff could return to his PRW. A VE testified that a person of plaintiff's age and experience, who could perform light work involving frequent crouching; kneeling; crawling; and, use of ladders, ropes, and scaffolds, could still perform plaintiff's PRW as a house inspector and service manager. (Tr. 886). The VE also stated that her testimony was consistent with the information contained in the *Dictionary of Occupational Titles* ("DOT"). (Tr. 888).

After reviewing the evidence of record, we find that the hypothetical question posed to the vocational expert fully set forth the impairments that the ALJ accepted as true and were supported by the record as a whole. *See Long v. Chater*, 108 F.3d 185, 188 (8th Cir. 1997); *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Although the hypothetical question indicated that plaintiff could frequently crouch, kneel, and crawl, and the ALJ's opinion states that plaintiff could only occasionally bend or stoop, the DOT indicates that plaintiff's PRW only requires occasional bending and/or stooping, if any at all. *See* DICTIONARY OF OCCUPATIONAL TITLES §§ 182.167-026, 899.131-018, *at* www.westlaw.com. Thus, even given the more restrictive term occasional, plaintiff could still perform both jobs. Accordingly, we find substantial evidence to support the ALJ's determination that plaintiff could still perform work that exists in significant numbers in the national economy.

AO72A
(Rev. 8/82)

We note that the medical evidence detailing plaintiff's condition after his date last insured indicates that his condition might well have worsened, after the relevant time period. However, while this evidence might provide a basis for the filing of a new application for benefits, it does not provide a basis for remand of the current action. Accordingly, it is suggested that plaintiff consider filing a new application for SSI.

**Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

ENTERED this 26th day of January 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)